UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RICKY JAMES BENNEFIELD, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Nos. 3:21-CV-309 |
| ) | 3:17-CR-079 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Before the Court is Ricky James Bennefield's ("Petitioner's") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 76].[1] The United States has responded in opposition. [Doc. 4]. Petitioner did not file a reply, and the time for doing so has passed. *See* Rule 5(d) of the Rules Governing Section 2255 Proceedings for the United States District Courts; *see also* [Doc. 3]. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 76] will be **DENIED**.

**I.  BACKGROUND**

In July 2017, Petitioner and one co-defendant were charged in a three-count indictment pertaining to conspiracy to commit mail and wire fraud, theft of government

---

[1] Document numbers not otherwise specified refer to the civil docket.

money and aggravated identity theft. [Crim. Doc. 1]. Petitioner was named in all three counts. [*See id.*].

An amended factual basis was filed by the Government on February 22, 2018. [Crim. Doc. 28]. The amended factual basis was found to be accurate after an independent investigation and set forth in the Presentence Investigation Report ("PSR"). [Crim. Doc. 38, ¶¶ 5-14]. On December 12, 2016, an investigation of Petitioner raping and molesting his step-daughter, revealed the additional crimes Petitioner was charged with in the underlying criminal case. The crimes involved a conspiracy with his wife, co-defendant. During the interview of the daughter/Petitioner's victim, she revealed the family, herself, Petitioner, co-defendant, and co-defendant's father, drove to Florida in June 2010. While in route, co-defendant's father died in the vehicle, and Petitioner had the family bury co-defendant's father in a shallow grave along the side of a road to avoid co-defendant's father's death looking like foul play because the body was covered in bruises. After abandoning the body and continuing their trek to Florida, Petitioner decided co-defendant's father's body was not buried in a favorable location. The family drove back to the shallow grave, uncovered the body, put him back in their vehicle, travelled to a different state, and reburied him in a second shallow grave. The family continued to their vacation destination telling no one of co-defendant's father's death.

Both Petitioner and co-defendant continued to cash co-defendant's father's Social Security Administration's ("SSA") checks until their daughter reported Petitioner's incest against her, almost six and a half years after burying the body. A Special Agent with SSA was contacted and a records check confirmed that co-defendant's father had been receiving

2

a monthly SSA check since December 2009. Further investigation revealed that on December 21, 2009, co-defendant's father's address of record with the SSA, and where the monthly checks were being mailed, had been changed from an Alabama address to a P.O. box in Gatlinburg, Tennessee, which was being paid for by Petitioner and co-defendant from 2009-2016 despite them living in several different states and cities outside Gatlinburg during that time.

Co-defendant's father had also been receiving Medicare benefits during that time although Medicare had no records of medical service being provided for the preceding six years. SSA mailed checks to the Gatlinburg P.O. Box from December 2009 through March 2013. From January 2009 through 2010, the SSA checks were deposited in a Regions Bank account. From 2011-2012 the checks were deposited into a TN State Bank account and the checks were co-endorsed by Petitioner. The benefit check for September 20, 2010, was co-endorsed by co-defendant. After March 2013 through 2016, SSA records show the SSA benefits were received by wire onto a debit card. Specifically, SSA records show that on March 15, 2013, payment of benefit was changed from checks to a Comerica Bank Direct Express debit card by co-defendant using her father's pin. ATM withdrawal footage showed Petitioner withdrawing the money from co-defendant's father's account and on a Comerica Bank Direct Express debit card.

On January 9, 2017, Petitioner was interviewed and admitted that co-defendant's father's death was June 20, 2020 and admitted to converting the benefits to his own use. From June 2010, seventy-eight (78) checks were issued and mailed to the Gatlinburg P.O. Box. All the checks were co-endorsed by either Petitioner or co-defendant and cashed for

3

their own use. Total restitution of SSA benefits was $101,668.00 and $20,982.00 to co-defendant's father's pension plan.

On March 19, 2018, Petitioner pled guilty to the indictment without a formal plea agreement. [Crim. Doc. 30]. Although there is no transcript of that hearing in the record, the minutes from the hearing indicate that Petitioner was arraigned and specifically advised of his rights under Rule 11, that his motion to change plea to guilty was granted, that he waived the reading of the Indictment, that he pled guilty to Counts 1-3 of the Indictment, that Petitioner was referred for a PSR, that a hearing on Petitioner's objections to the PSR were to be held July 9, 2018, and that he was to remain in custody until his sentencing hearing. [*Id.*].

The PSR calculated a total offense level of 15 and a criminal history category of IV, resulting in a guideline range of 30 to 37 months for Counts 1 and 2. [Crim. Doc. 38, ¶ 86]. However, Count 3 carried a mandatory 2-year consecutive sentence, making the effective guidelines range 54 to 61 months. [*Id.*].

The government filed a notice of no objections to the PSR. [Crim. Doc. 39]. Petitioner, through counsel, filed objections to the PSR. [Crim. Doc. 41]. Petitioner, through counsel, objected to the inclusion of Petitioner's crimes concerning his step-daughter, objected to the allegation that co-defendant's father was buried in a shallow grave and then moved to a different state, objected to the allegation that co-defendant's father was buried, objected to all statements made during interviews for which he was not present, objected to the allegation the he obstructed justice or an investigation by not reporting the death because there was no investigation when co-defendant's father died, objected to the

4

enhancement for using a minor child to commit the crimes charged, and objected to an upward variance. [*Id*.].[2]

The Court held a hearing on Petitioner's objections on July 9, 2018. After considering the filings and the evidence presented at the hearing, the Court overruled Petitioner's objections to the inclusion of statements from witnesses and facts about the investigation into the incest allegations which led to Petitioner being charged with the underlying criminal offenses and his objections to the inclusion of the potential grounds for departure or variance. [Crim. Doc. 62]. The Court sustained Petitioner's objection to the § 3B1.4 enhancement for using a minor to commit a crime, his objection to the § 2C1.1 enhancement for obstruction, and his objections to the PSR guidelines calculations. [*Id*.].

The Government filed a sentencing memorandum and motion for upward departure wherein it requested a sentence of 120 months due to the "extreme and uncharged conduct" of Petitioner's admitted abuse of his father-in-law's corpse in the presence of minor children. [Crim Doc. 50]. Petitioner, through counsel also filed a sentencing memorandum, requesting the Court sustain his objections to the enhancements and sentence him to a guidelines sentence within the new guidelines range. [Crim. Doc. 61].

Following the Court's order, a revised PSR ("RPSR") was issued, determining that Petitioner's new offense level was 12, making the effective guidelines range 45 to 51 months, after the mandatory consecutive term of imprisonment for Count 3 was included. [Crim. Doc. 64, ¶ 85].

---

[2] The Court notes that while Petitioner raised 27 objections in his notice of objections, for purposes of this order, the Court combined and consolidated these objections.

5

On August 22, 2018, after hearing from witnesses and Petitioner, the Court granted the Government's motion for an upward departure and sentenced Petitioner to a total of 120 months' imprisonment and then three years of supervised release. [Crim. Doc. 68]. Petitioner filed an appeal [Crim. Doc. 70], which was affirmed by the Sixth Circuit on June 20, 2019. Petitioner did not file a petition for certiorari from the Supreme Court, and on August 22, 2021, he filed this § 2255 motion.

## II.  STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that

applies in habeas cases alleging constitutional error). To obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

III.  ANALYSIS

As an initial matter, Petitioner seems to raise 2 claims of ineffective assistance of counsel in this § 2255 motion: 1) for instructing Petitioner not to say much to the judge at sentencing, and 2) for misleading Petitioner and "promising" that he would only receive 51 months maximum. [Doc. 1; Crim. Doc. 76]. Petitioner also raises a claim that the Court erred in considering any information regarding his step-daughter at sentencing. The Court will address Claim 3 first, and then Claims 1 and 2 together.

### A. Timeliness

As a preliminary matter, the Government asserts that Petitioner's motion is untimely as the one-year period of limitations applies to Petitioner's motion. [Doc. 4]. Under 28 U.S.C. § 2255, Petitioner's limitation period runs from the latest of four dates – 1) the date when the judgment of conviction is finalized, 2) the date an impediment by government action is removed if applicable, 3) the date the asserted right was initially recognized by the Supreme Court or the date when a newly recognized right is made retroactively applicable, and 4) the date when the facts surrounding the claim(s) could have been discovered through due diligence. Here, Petitioner does not assert a newly recognized right, any impediment by government action keeping him from timely filing this § 2255 motion, nor any new facts which could have been discovered before sentencing through the exercise of due diligence. Therefore, the appropriate limitations date is the date when Petitioner's judgment became final.

Petitioner's judgment became final September 16. 2019, because he did not file a petition for certiorari from the Supreme Court. As Petitioner filed the instant motion

August 22, 2021, almost an entire year beyond the period of limitations provided in 28 U.S.C. § 2255(f)(1), his motion is untimely, absent the applicability of equitable tolling.

Equitable tolling "allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000)). The AEDPA limitations period may be subject to equitable tolling if the movant shows that (1) extraordinary circumstances beyond his control made timely filing of a federal habeas petition impossible and (2) the movant has acted diligently in pursuing his rights. *Holland v. Florida*, 560 U.S. 631, 649 (2010). "[T]he doctrine of equitable tolling is used sparingly by federal courts," *Robertson*, 624 F.3d at 784, and the movant bears the burden of showing that equitable tolling is appropriate. *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003).

To demonstrate in this case that he is entitled to equitable tolling, Petitioner must establish that he has pursued his rights diligently and that some extraordinary circumstance prevented timely filing. *Holland*, 560 U.S. at 649. Petitioner alleges that he was in custody on his state charges when his time to file a § 2255 expired. However, this argument is not persuasive as the Sixth Circuit has states that a Petitioner is still in custody for § 2255 purposes on state charges running consecutive to federal charges. *Ospina v. United States*, 386 F.3d 750, 752-53 (6th Cir. 2004). As Petitioner has not alleged any impediment to the law library or other ability to draft a § 2255 motion, Petitioner has not met his burden for equitable tolling due to extraordinary circumstance. Thus, the Court need not address the

9

diligence prong of the equitable tolling test. Petitioner's § 2255 motion [Doc. 1, Crim. Doc. 76] is untimely and will be **DENIED** as such. However, Petitioner's claims also fail on their merits.

    B. Merits

        a. Claim 3

Petitioner primarily argues that the Court erred in discussing anything with Stormi Chastain as she had nothing to do with Petitioner's crimes to which he was being sentenced. [Doc. 1]. The Government responds that Petitioner did not raise this issue on appeal and is therefore procedurally defaulted from raising it now. [Doc. 4, p. 4]. Further, the Court explicitly stated that it would not consider Petitioner's crimes against his step-daughter in determining his sentence. [Crim. Doc. 62, p. 6].

As Petitioner failed to raise this claim on appeal, he is procedurally defaulted from bringing this claim. *United States v. Calderon*, No. 98-1336, 1999 WL 801587, at *3 (6th Cir. Sept. 27, 1999). Further, the record reflects that Petitioner's counsel objected to any discussion of Petitioner's crimes against his step-daughter at sentencing, but was overruled by the Court. [Crim. Docs. 41 & 62]. The record also reflects that his crimes against his step-daughter were not used a basis to enhance his sentence and were barely addressed by the Court during the sentencing hearing. [Crim. Doc. 73].

As the Supreme Court has explained, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

10

Petitioner's allegation that the Court improperly enhanced his sentence based on the crimes against his step-daughter are contradicted by the record and are not credited. Thus, Claim 3 also fails on the merits.

### b. Claims 1 and 2

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

11

Case 3:17-cr-00079-RLJ-DCP Document 78 Filed 07/22/22 Page 11 of 14 PageID #: 1135

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Petitioner's arguments fail at both *Strickland's* steps. Petitioner's primary arguments for ineffective assistance of counsel are that his counsel promised that Petitioner would get 51 months' imprisonment and that his counsel advised him not to say much at sentencing. [Doc. 1].

Petitioner's statement that he was promised a specific sentence is contradicted by the record and not credited. Petitioner, at his change of plea hearing, was advised of his rights under Rule 11, and would have specifically stated that he was not promised a certain sentence. *See* [Crim. Doc. 30]. At his sentencing hearing, Petitioner was advised *by the Court* before he was sentenced that his sentence could be as much as 20 years as to Count 1, up to 10 years as to Count 2, and a 2-year consecutive sentence for Count 3. [Crim. Doc. 73, pp. 4-5]. Petitioner acknowledged that he understood. [*Id*. at 5]. *Blackledge*, 431 U.S. at 74. Thus, Petitioner has not met his burden to show deficient performance as to Claim 2.

Petitioner has also not shown that counsel was ineffective for advising him not to say much at sentencing. Petitioner answered the Court's questions at sentencing and even

12

spoke on his own behalf when he was given the opportunity to allocute. [Crim. Doc. 73]. Petitioner has not stated what he wished to say or how anything he said would have changed the outcome of the sentencing hearing. Thus, Petitioner has not met his burden to show prejudice as to Claim 1.

Further, Petitioner has not alleged that he would not have pled guilty or proceeded to trial but for counsel's mis-advice. Petitioner thus cannot bear his burden of showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, Petitioner's Claims 1 and 2 also fail on their merits.

## IV. CONCLUSION

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 76] will be **DENIED** and **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A petitioner whose claims have been rejected on the merits or a petitioner who has failed to make a substantial showing of the denial of a constitutional right satisfies the

13

requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Having examined Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

    A separate judgment will enter.

        **IT IS SO ORDERED.**

                                                  ENTER:

                                                          s/ Leon Jordan
                                                  United States District Judge

14

Case 3:17-cr-00079-RLJ-DCP   Document 78   Filed 07/22/22   Page 14 of 14   PageID #: 1138